HAMITER, Justice
 

 (dissenting).
 

 An award of alimony under Civil Code Article 160 is revocable, according to the provisions of the same article, only (1) when it becomes unnecessary and (2) in case the wife should contract a second marriage.
 

 i In this case the defendant Keeney does not contend, and he offered no evidence to show, that alimony is no longer needed by Mrs. Keeney. Therefore, her alimony award against him of $50 per month, made at the time she obtained the divorce, has not been revoked unless her bigamous, void marriage with Allison, admittedly contracted in good faith, is of the kind contemplated by the provision, “in case the wife should contract a second marriage.”
 

 Admittedly, as pointed out in the majority opinion, to affirm the holding of the district court, that the obligation of a divorced husband to pay alimony is terminated only by a valid second marriage on the part of his wife, will in some instances result in a financial burden to the husband. But the question of whether or not the resulting of such a situation would be harmful to our social and economic life, and therefore contrary to public policy, is one which addresses itself to the sound discretion of the Legislature, not to the judiciary. Our duty here is to determine merely if the lawmakers intended both a valid marriage and a bigamous marriage by the clause, in Civil Code Article 160, “in case the wife should contract a second marriage.”
 

 A bigamous marriage, such as Mrs. Keeney entered into with Allison in good faith, is not of the kind that is merely annullable and, hence, subject to ratification by the. parties thereto; it is an absolute nullity. This is clearly shown in Summerlin et al. v. Livingston et al., 15 La.Ann. 519 (cited and quoted from approvingly in Prieto et al. v. Succession of Prieto, 165 La. 710,
 
 *598
 
 115 So. 911), the court therein commenting:
 

 “ 'Persons legally married are, until a dissolution of marriage, incapable of contracting another, under the penalties established by the laws of this State.’ C.C. 94 [93 in Code of 1870]. The nullity of such a contract, is absolute; as it contravenes the policy of the law, and, besides, subjects the guilty party to a criminal prosecution. Such nullities are not even susceptible of confirmation or ratification, whether express or implied. C.C. 115, 2252. Nor is it necessary that a direct action be instituted for the purpose of setting aside the contract : its nullity may be demanded by way of exception or defense. * * *.
 

 ‡ sjs *
 
 *
 
 ❖ ‡ :{i
 

 “ * * * No doubt, the parties entered into the bonds of matrimony; but if one of them was at the time incapacitated by a previous marriage, the second contract, although clothed with the forms of law, was radically null and void. It is true, that such a contract may produce civil effects; but this takes place by special provision of law, and only in favor of the the party who acted in good faith, and in favor of the children born of the marriage. C.C. 120. But even then the contract itself has, in other respects, no vitality; and, in legal parlance, the parties have never been married.” (Brackets ours).
 

 In the light of these expressions can it be correctly said that the codal provision, “contract a second marriage”, includes an absolutely void ceremony and marriage, no marriage at all, a bigamous marriage? I think not. In enacting provisions of this kind the lawmakers have in mind valid transactions; when intending void undertakings, they so declare. Thus, if the intention here had been that the provision should relate both to a' valid and an absolutely void marriage, undoubtedly the Legislature would have said “ * * * in case the wife should contract a second marriage, whether it be valid or invalid”.
 

 By placing on the clause in question the construction that the award of alimony is terminated whenever the divorced wife enters into a subsequent bigamous marriage, we must also hold, on the appropriate case coming before us, that the usufruct of a surviving sponse in community terminates by his or her entering into a similar void marriage. A provision substantially identical as the one here is found in Civil Code Article 916, it reading: “This usufruct shall cease, however, whenever the surviv- or shall enter into a second marriage.”
 

 The law providing for the payment of alimony in this state is found in Civil Code Articles 148 and 160. The first of these relates to alimony pendente lite, or support money during the pendency of a suit for separation from bed and board or divorce. The second deals with alimony following the rendition of a judgment of divorce. Unless there has been instituted such a suit, the wife has no right of action against the husband for either kind; the claim for
 
 *600
 
 alimony is incidental to a proceeding of that nature, is accessory to it, and is inseparable from it. Carroll v. Carroll, 42 La.Ann. 1071, 8 So. 400.
 

 Until a judgment of divorce is rendered, the alimony recoverable is that provided by Civil Code Article 148. Such alimony, the marriage being yet undissolved, has as its basis the husband’s obligation announced by Civil Code Article 120 of furnishing his wife with whatever is required for the convenience of life, in proportion to his means and condition. On the rendition of the divorce decree the duty to support imposed by that codal provision ceases.
 

 However, under another provision of law (Civil Code Article 160), obviously adopted to prevent the divorced wife from becoming a charge on society, the husband may be required, at the discretion of the court, to furnish his divorced wife with support (or alimony or a pension or an allowance) out of his property and earnings, to the extent of not more than one-third of his income, if she has obtained the divorce and has not sufficient means for her maintenance. This support, if ordered by the court, is revocable in two cases: (1) when it becomes unnecessary and (2) when the wife contracts a second marriage.
 

 Since the obligation imposed by Civil Code Article 160 on the divorced husband to pay alimony to the wife is conditioned on her not having sufficient means for her maintenance, clearly both of the revocation cases, set forth in the article, contemplate situations where she becomes no longer in need of his assistance. In so many words the first declares just that. The theory of the other case, in my opinion, is that on the wife’s contracting a second valid marriage the new husband assumes the duty, and becomes legally bound, to maintain her, in which event she is considered, in the eyes of the law, no longer in need of the support of the divorced husband. Should the second venture be bigamous (spch as the one Mrs. Keeney participated in), however, there is and can be no effective contract between the participants and, hence, no valid assumption of the divorced husband’s obligation to support.
 

 If the plaintiff herein is in need of support (nothing in the record discloses that she is not), she should be entitled to recover alimony, either from defendant or from her bigamous husband, Allison. She has no right or cause of action against Allison, however, unless it be to recover damages flowing from the fraud and deception that he practiced on her, for the law imposes no obligation whatever on either spouse in a void marriage, the evident reason for this being that there is no valid ceremony, no contract, no marriage at all. Moreover, this court has held in several instances that alimony is not recoverable in a suit to annul a marriage; it is exclusively a right which may arise in a suit for separation from bed and board or divorce, a remedy for dissolving a valid mar
 
 *602
 
 riage. State v. Barilleau, 128 La. 1033, 55 So. 664, Monteleone v. O’Hanlon, 159 La. 796, 106 So. 308.
 

 In the majority opinion it is said that to interpret the phrase “contract a second marriage” (of Civil Code Article 160) as meaning only a valid second marriage would produce absurd consequences, and to support the statement two examples are offered. The first is that “a wife awarded alimony, from her divorced husband could contract a second bigamous marriage in bad faith and at her convenience and pleasure have the second marriage declared a nullity and invalid, and then force her first husband to resume the payment of alimony if she did not have sufficient means for her maintenance.” My answer to this is that the .awarding of alimony to a divorced wife is within the discretion of the court, as Civil Code Article 160 specifically declares, and whenever it appears that she was in bad faith in entering into a bigamous second marriage her claim for the alimony should, and no doubt would, be denied by the judge. The second example given in the majority opinion, in support of the statement regarding absurd consequences, is that Mrs. Keeney, in the case under consideration, would be entitled to alimony for the period during which she lived with Allison, although she does not demand it. Mrs. Keeney, in my opinion, would not be entitled to alimony for that period. In the first place she is judicially estopped by the allegation of her petition that “said alimony has been paid by the defendant herein or discharged through and including the 10th day of December, 1944.” (The date mentioned is that on which .she obtained judgment annulling her bigamous marriage.) In the second place she has legally waived all of her rights to alimony for that period by having accepted the support of Allison and also by having failed to protest Keeney’s non-payment of alimony under her judgment.
 

 There can be no doubt that while his divorced wife was living with, and being supported by Allison, the defendant could have obtained, through appropriate proceedings, the annulment of the alimony judgment standing against him on the ground that his support of her was not then necessary. But he made no effort to do this. Rather, he permitted the judgment to remain in full force and effect until the instant proceeding was commenced, at which time he assumed only the legal position (now relied on) that his wife’s bigamous marriage revoked the alimony award.
 

 Mrs. Keeney, it is true, lived with Allison for almost two years; but that period of time, during all of which she was in good faith and believed that he was her lawful husband, is of no importance here. Under the majority holding herein, her claim for alimony against this defendant would be without merit even if her bigamous marriage with Allison had been judicially declared a nullity on the same day that it was performed.
 

 
 *604
 
 “Persons legally married are, until a dissolution of marriage, incapable of contracting another * * Civil Code Article 93. Allison was so incapacitated at the time of the performance of the void ceremony in question, and because of that condition Mrs. Keeney could not and did not “contract a second marriage” within the intendment and contemplation of Civil Code Article 160.
 

 I respectfully dissent.